IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**JEFFREY BLANIAR,**

      Plaintiff,

v.                                      **CIVIL ACTION NO. 5:20-CV-169**
                                               Judge Bailey

**SOUTHWESTERN ENERGY COMPANY**
**et al.,**

      Defendants.

**MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Pending before this Court are two motions–defendant Campbell Fittings, Inc.'s Motion for Summary Judgment [Doc. 136] and accompanying Memorandum of Law [Doc. 137], and defendant The Gorman-Rupp Company's Motion for Summary Judgment [Doc. 138] and accompanying Memorandum of Law [Doc. 139]. Hearing no response in opposition within the time-frame prescribed by this Court's Local Rules, this Court entered an Order Instructing Responsive Briefing [Doc. 152] on December 1, 2021, instructing plaintiff to file responsive briefing within fourteen (14) days of the entry of the Order. Moreover, defendants were instructed to file reply briefs within fourteen (14) days of the filing of plaintiff's responsive briefing. [Id.].

In contravention of the aforementioned deadline imposition, the parties filed a Stipulation Extending Response and Reply Brief Deadlines for Pending Motions for Summary Judgment [Doc. 156] and a Stipulation Extending Reply Deadline [Doc. 165], which purported to extend briefing deadlines into January 2022. On December 28, 2021, plaintiff filed

1

responses and memoranda in opposition to defendants' Motions. *See* [Docs. 160, 161, 162 & 163]. Based on the deadlines imposed by this Court, this matter is now ripe for adjudication.

## **BACKGROUND**

On or about July 7, 2018, plaintiff allegedly suffered injuries while working as an employee of defendant Southwestern Energy Company ("defendant SWN"). Plaintiff filed his original complaint on or about June 15, 2020, in the Circuit Court of Wetzel County, West Virginia.

Subsequently, plaintiff filed an amended complaint on or about July 7, 2020, alleging additional causes of action. More specifically, the operative complaint added new claims against defendant SWN and related companies. The operative complaint alleges that a pump on a SWN location was started in preparation of a pump down to begin drilling operations, and that both the intake and discharge valves were closed as this operation commenced. *See* [Doc. 1-1]. Approximately one half-hour after the pump was started, a decision was made to shut off the pump. [Id.]. Plaintiff contends that the pump was not turned off at that time. [Id.]. Moreover, plaintiff asserts that he checked with his supervisor and proceeded to shut down the pump, at which time it exploded, causing the hose on the suction side of the pump to disconnect, resulting in serious injuries. [Id.].

Further, plaintiff alleges that at the time of the incident, he was an employee of defendant SWN and asserted a cause of action for deliberate intent against it and its related

companies. [Id. at count I]. Plaintiff also asserted a negligence cause of action against defendant SWN, its related entities, and Daniel and Rhonda During. [Id. at count II].[1]

Additionally, plaintiff alleges strict product liability against defendants Gorman-Rupp Company ("defendant GRC"), JGB Enterprises, Inc. ("defendant JGB"), and Campbell Fittings, Inc. ("defendant Campbell"). [Id. at count III]. Next, plaintiff alleges that defendant GRC was negligent, and strictly liable, as the designer and manufacturer of the pump involved in the incident forming the basis of his complaint. [Id. at counts IV and V]. Plaintiff further asserts a cause of action for breach of warranty against defendant GRC arising from its alleged manufacturing of the pump involved in the underlying incident. [Id. at count VI]. Finally, plaintiff contends that the hose involved in the underlying incident was manufactured by defendant JGB, and that the hose accessories were manufactured by defendant Campbell. [Id. at counts VII–XII].

This matter was timely removed to this Court based on diversity jurisdiction. [Doc. 1]. On June 25, 2021, plaintiff filed an amended complaint [Doc. 75], asserting new claims against Producers Supply as a potentially responsible party for the underlying incident.[2] This amended complaint did not add any new factual allegations or causes of action against defendants Campbell or GRC. This Court will address the merits of the arguments asserted by the parties in turn below.

---

[1]The Durigs and various corporate entities were dismissed from this action via prior Order of this Court.

[2]Producers Supply was dismissed from this action via prior Order of this Court.

3

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." **Id.** "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Id.** at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Id.** at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c);

4

***Celotex Corp.***, 477 U.S. at 323–25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." ***Beale v. Hardy***, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." ***Celotex Corp.***, 477 U.S. at 322.

## DISCUSSION

### I.   Applicable Law

In West Virginia, product liability may be based on negligence, strict liability, or breach of warranty. Syl. Pt. 6, ***Ilosky v. Michelin Tire Corp.***, 172 W.Va. 435, 307 S.E.2d 603 (1983). These theories were further informed by the Supreme Court of Appeals of West Virginia in ***Morningstar v. Black & Decker Manufacturing Co.***, 162 W.Va. 857, 253 S.E.2d 666 (1979). Therein, the ***Morningstar*** Court held that (1) a product is defective unless it is "reasonably safe" for its "intended use"; (2) there are three types of defects in product liability law–design, manufacture, and use; and (3) a case of action is recognized in product liability cases. *See generally, **id.***

The test for establishing strict liability in tort is "whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard is not determined by the particular manufacturer, but by what a reasonably prudent manufacturer's standards

5

should have been at the time the product was made." ***Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.***, 223 W.Va. 209, 213, 672 S.E.2d 345, 349 (2008) (citing Syl. Pt. 4, ***Morningstar*** at 857, 253 S.E.2d at 666)).

A superceding cause is "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." ***Adams v. Parsons***, 2011 WL 1464856, at n.7 (S.D. W.Va. Apr. 15, 2011) (quoting Restatement (Second) of Torts § 440 (1965)). To constitute a superseding cause, the intervening act "must be a negligent act which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury." ***Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC***, 209 W.Va. 318, 332, 547 S.E.2d 256, 270 (2001) (internal citations omitted).

## II. Defendant Campbell's Motion for Summary Judgment and Memorandum in Support

Defendant Campbell asserts it is entitled to summary judgment on plaintiff's product liability claims. [Doc. 137 at 5]. Defendant Campbell offers three arguments in support. First, it contends that the acts of a third party–in this instance, defendant SWN–were negligent and constituted a superceding cause to the incident as a matter of law. [Id.]. More specifically, defendant Campbell argues that by allowing an unsafe and hazardous amount of pressure to build in the pump (an occurrence referred to as "deadheading"), defendant SWN acted negligently; defendant Campbell contends that this negligence caused the hose assembly it manufactured to be exposed to a "significantly greater pressure" than its intended use, thereby defeating plaintiff's claim against it. [Id. at 5–6].

6

Next, defendant argues plaintiff's claim for products liability brought under a theory of strict liability fails as a matter of law because the hose did not fail and was safe for its intended use. [Id. at 6].

Finally, defendant Campbell asserts plaintiff's products liability claim brought under a breach of warranty theory fails as a matter of law because the hose assembly at issue was created with another company's fitting product thereby breaching the applicable warranty. [Id.].

In his Brief in Opposition [Doc. 161], plaintiff argues first that there is a genuine issue of material fact as to whether defendant SWN's alleged negligence concerning the deadhead was a superseding cause of plaintiff's injuries. [Doc. 161 at 5]. Next, plaintiff asserts that there is a factual dispute as to whether defendant Campbell's fitting was being used as intended and whether it failed. [Id. at 7]. Notably, plaintiff does not offer argument against defendant Campbell's assertion that the subject warranty was breached and thereby inapplicable at the time of the underlying incident. See [id.].

### A.     Superceding Cause

Several witnesses, including plaintiff himself, have testified that allowing the pump at issue to "deadhead" was not intended, and that allowing a machine to operate in an unintended condition could be considered negligent. [Doc. 137 at 5]. As stated previously, defendant Campbell contends this negligence by defendant SWN constitutes a superseding act thereby defeating plaintiff's products liability claim premised on negligence. [Id. at 6].

However, based on a review of the extensive and competing testimony concerning this allegedly superceding negligence, this Court is disinclined to grant defendant Campbell's request in this regard. As identified by plaintiff, defendant SWN has presented evidence and

testimony to support its position that it was not negligent at all. [Doc. 161 at 6]. As identified by plaintiff, whether the negligence of two or more persons proximately caused or contributed to the injury of another person is a question of fact for a jury to determine. ***Evans v. Farmer***, 148 W.Va. 142, 155, 133 S.E.2d 710, 717–18 (1963). Moreover, plaintiff notes that the Supreme Court of Appeals of West Virginia has consistently held that determining an intervening cause within the proximate cause analysis is a task for a jury unless the facts and inferences are clear as a matter of law. ***Harbaugh v. Coffinbarger***, 209 W.Va. 57, 65, 543 S.E.2d 338, 346 (2000) (citing ***Evans*** at 143, 133 S.E.2d at 711).

Here, the record before this Court leads to inherently conflicting inferences concerning the underlying incident. As such, and in viewing these inferences in the light most favorable to plaintiff, this court declines to grant summary judgment to defendant Campbell based on this argument.

### B. Strict Liability, Safety for Intended Use, and Failure

Defendant Campbell asserts that testimony in this case indicates the intended use of the hose assembly at issue was to withstand a maximum pressure of ten pounds per square inch. [Doc. 137 at 6]. Further, defendant Campbell alleges that the testimony offered by various witnesses that the occurrence of steam within the subject hose assembly is indicative that the pressure exerted with the hose assembly "was much greater than the intended use (10 pounds per square inch). [Id.]. Base on this testimony, defendant Campbell contends that the subject hose assembly was exposed to conditions outside the parameters of its intended use. As such, defendant Campbell concludes that the product did not fail, thereby defeating plaintiff's claim based on strict liability. This Court disagrees.

8

As identified by plaintiff, defendant Campbell's sole argument that the fitting was not being used as intended is based on testimony that steam was present. [Doc. 161 at 7]. Based on the presence of steam, defendant Campbell then concludes that the pressure exerted was higher than ten pounds per square inch. However, nothing in the record evidences that any pressure measurements were taken at the pump at the time of the hose failures. [Id.]. The existence of steam, while potentially related to the pressures exerted on the hose assembly is certainly probative, but not necessarily dispositive.

In fact, the deposition testimony of Chris Killough, defendant SWN's senior supervisor, revealed that the subject hose assembly was connected to the suction side of the pump likely resulting in a negative pressure situation rather than pressure measuring ten pounds per square inch. [Doc. 161-2 at 86]. Given this conflicting evidence, this Court declines to grant summary judgment based on this argument.

### C.    Breach of Warranty

Finally, defendant Campbell submits that it is entitled to summary judgment on plaintiff's products liability claim based on a theory of breach of warranty. In support thereof, defendant Campbell submitted its Warranty and Guarantee of Quality [Doc. 137-1], and asserts that because the subject fitting was created with a non-Campbell fitting product, the warranty was breached at the time of the underlying incident. [Doc. 137 at 6].

Plaintiff does not address this argument concerning breach of warranty in his responsive briefing at all. Accordingly, this Court will grant summary judgment to defendant Campbell concerning plaintiff's products liability claim premised on a breach of warranty theory.

9

### III. Defendant GRC's Motion for Summary Judgment and Memorandum in Support

As identified by plaintiff, there were two primary pieces of equipment involved in this incident–the aforementioned boost pump and hose assembly. The boost pump was sold to defendant SWN by Bartholow Rental Company a/k/a Barco Pump. One of the major components contained within the Barco pump was another pumping apparatus, PAH Series boost pump model PAH8A60, manufactured and sold by defendant GRC. See [Doc. 160-1 at ¶ 10]. Plaintiff contends that when the pump was sold to defendant SWN, defendant GRC provided poor and inadequate warnings in the pump's maintenance manual. [Doc. 160 at 3].

In support of its Motion for Summary Judgment, defendant GRC argues that plaintiff has failed to establish that it is strictly liable for designing or manufacturing a defective or dangerous product, or that it committed any negligent act or breached any warrant. [Doc. 139 at 9]. In viewing the facts and inferences contained in the record in a light most favorable to plaintiff, this Court disagrees.

Plaintiff's claims center on the proferred expert opinions of engineer Mark Sokalski. See [Doc. 160-7]. In sum, Mr. Sokalski opined that defendant GRC (1) provided a poor and insufficient warning in the pump's manual; and (2) failed to provide a warning label on the pump stating that the suction valve must always be open during pump operations. Specifically, Mr. Sokalski noted that:

> Gorman-Rupp Co. provided a poor and insufficient warning (page A -2;first warning) in their PAH series "Installation, Operation, and Maintenance Manual". Additionally, Gorman-Rupp Co. failed to provide a clear and proper precautionary warning label ("Danger") on the Barco pump rental unit, not as a

10

> warning against operating the pump at deadhead conditions (closed discharge valve), but to provide a "Danger" precautionary warning stating that the suction valve must always be open during any pump operation. The "Danger" precautionary warning should state: "Excessive pressure will occur during pump operation if the pump's suction and discharge valves are both closed".

[Id. at 40]. Defendant GRC offers several challenges to Mr. Sokalski's opinions. First, it argues that its safety handbook cautions against operating the pump "against a closed valve" as Mr. Sokalski's report requires. However, plaintiff argues this warning conflicts with the pump manual, which states that momentary closures of the valve are acceptable when required for startup and shutdown procedures. [Doc. 160 at 5]. Based on this purported inconsistency, plaintiff contends that a reasonable juror may find the warnings to be defective. [Id.].

Next, defendant GRC argues that it was unnecessary to warn against operating the pump when both the suction and discharge valves were closed; further, it contends that if a user, like plaintiff, had followed the manual to not operate the pump with a closed discharge valve, it would be irrelevant if the suction valve were open. Conversely, plaintiff asserts that the warning manual is insufficient to warn users in various scenarios of the possible harm associated with continued use of the pump. [Id. at 5–6].

Finally, defendant GRC asserts that plaintiff cannot establish that the allegedly defective warning was the proximate cause of plaintiff's injuries. *See* [Doc. 139 at 12–13]. Defendant GRC argues that plaintiff and defendant SWN employees knew or should have known not to operate the subject pump when it was deadheaded. [Id.]. However, plaintiff

11

counters that he had never been designated as a pump operator and had no reason to know of any warnings, instruction manuals, or exclusion zones specific to the boost pump. [Doc. 160 at 6–7]. Based on this lack of knowledge, plaintiff asserts that the heightened warnings proposed by Mr. Sokalski could have alerted him to the danger posed in attempting to shut down the boost pump. [Id.].

Defendant GRC's arguments with the evidence presented by Mr. Sokalski may indeed prove to be valid, but this Court cannot resolve factual disputes amongst the parties at this stage of litigation when all factual inferences must be viewed in plaintiff's favor.

## CONCLUSION

For the reasons contained herein, defendant Campbell Fittings, Inc.'s Motion for Summary Judgment [**Doc. 136**] is **GRANTED IN PART AND DENIED IN PART**, and defendant The Gorman-Rupp Company's Motion for Summary Judgment [**Doc. 138**] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

DATED: January **7**, 2022.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE