**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**JEFFREY BLANIAR,**

          Plaintiff,

     v.                                                    **CIVIL ACTION NO. 5:20-CV-169**
                                                          Judge Bailey

**SOUTHWESTERN ENERGY COMPANY**
**et al.,**

          Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

Pending before this Court are two Motions for Summary Judgment–Southwestern Energy Company, SWN Well Services, LLC, SWN Drilling Company, LLC, SWN Water Resources Company, LLC, and SWN Production Company, LLC's Motion for Summary Judgment [Doc. 172]; and Defendant JGB Enterprises, Inc.'s Motion for Summary Judgment [Doc. 174]. Each movant filed respective Memoranda in Support. *See* [Docs. 173 & 175]. Plaintiff filed respective Responses in Opposition [Docs. 180 & 181] and Memoranda in Support [Docs. 178 & 179]. Thereafter, movants filed respective Replies [Docs. 183 & 184].

## BACKGROUND

On or about July 7, 2018, plaintiff suffered injuries while working as an employee of defendant Southwestern Energy Company ("defendant SWN"). Plaintiff filed his original complaint on or about June 15, 2020, in the Circuit Court of Wetzel County, West Virginia.

1

Subsequently, plaintiff filed an amended complaint on or about July 7, 2020, alleging additional causes of action.  More specifically, the operative complaint added new claims against defendant SWN and related companies.  The operative complaint alleges that a pump on a SWN location was started in preparation of a pump down to begin drilling operations, and that both the intake and discharge valves were closed as this operation commenced. *See* [Doc. 1-1].  Approximately one half-hour after the pump was started, a decision was made to shut off the pump.  [Id.].  Plaintiff contends that the pump was not turned off at that time.  [Id.].  Moreover, plaintiff asserts that he checked with his supervisor and proceeded to shut down the pump, at which time it exploded, causing the hose on the suction side of the pump to disconnect, resulting in serious injuries.  [Id.].

Further, plaintiff alleges that at the time of the incident, he was an employee of defendant SWN and asserted a cause of action for deliberate intent against it and its related companies.  [Id. at count I].  Plaintiff also asserted a negligence cause of action against defendant SWN, its related entities, and Daniel and Rhonda Durig.  [Id. at count II].[1]

Additionally, plaintiff alleges strict product liability against defendants Gorman-Rupp Company ("defendant GRC"), JGB Enterprises, Inc. ("defendant JGB"), and Campbell Fittings, Inc. ("defendant Campbell").  [Id. at count III].  Next, plaintiff alleges that defendant GRC was negligent, and strictly liable, as the designer and manufacturer of the pump involved in the incident forming the basis of his complaint.  [Id. at counts IV and V].  Plaintiff further asserts a cause of action for breach of warranty against defendant GRC arising from its alleged

---

[1]The Durigs and various corporate entities were dismissed from this action via prior Order of this Court.

manufacturing of the pump involved in the underlying incident. [Id. at count VI]. Finally, plaintiff contends that the hose involved in the underlying incident was manufactured by defendant JGB, and that the hose accessories were manufactured by defendant Campbell. [Id. at counts VII–XII].

This matter was timely removed to this Court based on diversity jurisdiction. [Doc. 1]. On June 25, 2021, plaintiff filed an amended complaint [Doc. 75], asserting new claims against Producers Supply as a potentially responsible party for the underlying incident.[2] This amended complaint did not add any new factual allegations or causes of action against defendants Campbell or GRC.[3]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the

---

[2]Producers Supply was dismissed from this action via prior Order of this Court.

[3]In a prior Order, this Court granted in part and denied in part defendant Campbell's Motion for Summary Judgment, and denied defendant GRC's Motion for Summary Judgment.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

4

## DISCUSSION

Given the extensive and voluminous briefing on the two pending Motions for Summary Judgment, this Court will address the merits of each Motion in separate subheadings herein while construing the underlying facts in the light most favorable to plaintiff as the non-movant.

I.    **Southwestern Energy Company, SWN Well Services, LLC, SWN Drilling Company, LLC, SWN Water Resources Company, LLC, and SWN Production Company, LLC's Motion for Summary Judgment**

Plaintiff alleges two counts against defendants Southwestern Energy Company, SWN Well Services, LLC, SWN Drilling Company, LLC, SWN Water Resources Company, LLC, and SWN Production Company, LLC (collectively, "SWN defendants"): a deliberate intent action under W.Va. Code § 23-4-2 (count I) and a claim for common law negligence (count II).

A.    **Count I - Deliberate Intent**

The parties agree that West Virginia's deliberate intent provides two ways in which a plaintiff may overcome statutory immunity granted to employers under the workers' compensation act, and this Court will discuss each avenue in turn.

1.    **Plaintiff cannot establish SWN defendants acted with a conscious, subjective, and deliberate intent to harm plaintiff.**

Under the West Virginia Workers' Compensation Act, W.Va. Code §§ 23-1-1 *et seq.*, an employer and its agents are exempt from actions related to an employee's injury. *See* W.Va. Code §§ 23-2-6 and 23-2-6a. Such immunity, however, may be overcome by demonstrating deliberate intent. To maintain a claim for deliberate intent under W.Va. Code § 23-4-2(d)(2)(A), plaintiff must establish that SWN defendants "acted with a consciously, subjectively, and deliberately formed intention to produce the specific result of injury or death

5

to an employee." W.Va. Code § 23-4-2(d)(2)(A). This "requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of: (i) Conduct which produces a result that was not specifically intended; (ii) conduct which constitutes negligence, no matter how gross or aggravated; or (iii) willful, wanton or reckless misconduct." Id. *See also Dotson v. Elite Oil Field Servs.*, 91 F.Supp.3d 865, 870 (N.D. W.Va. 2015) (Keeley, J.) (stating the employee must allege that "an employer acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury.") (internal citation omitted). Further, "neither negligence, recklessness nor wilful misconduct satisfies the requirements of this subsection–instead, . . . a plaintiff must prove that a . . . person granted immunity actually tried to injure or kill him." *Williams v. Harsco Corp.*, 2011 WL 3035272, at *2 (N.D. W.Va. July 22, 2011) (Keely, J.) (quoting Syl. Pts. 7–9, *Tolliver v. Kroger Co.*, 201 W.Va. 509, 498 S.E.2d 702, 715 (1997)).

Here, SWN defendants argue that plaintiff has failed to present any evidence in this case indicating that any SWN defendant formed a conscious intent to produce the specific result of plaintiff's injury. [Doc. 173 at 7–8]. Plaintiff does not oppose this contention in its responsive briefing, and the undisputed facts suggest to this Court that, as a matter of law, plaintiff has failed to establish deliberate intent through this avenue.

**2.    Genuine issues of material fact exist as to whether plaintiff can establish deliberate intent through the five-factor framework articulated in W.Va. Code § 23-4-2(d)(2)(B).**

The parties agree that the only other method to overcome the statutory immunity discussed above and maintain a deliberate intent claim against SWN defendants is for plaintiff to prove each of the following five factors:

6

(i) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(ii) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition.

(I) In every case actual knowledge must specifically be proven by the employee or other person(s) seeking to recover under this section, and shall not be deemed or presumed: Provided, that actual knowledge may be shown by evidence of intentional and deliberate failure to conduct an inspection, audit or assessment required by state or federal statute or regulation and such inspection, audit or assessment is specifically intended to identify each alleged specific unsafe working condition.

(II) Actual knowledge is not established by proof of what an employee's immediate supervisor or management personnel should have known had they exercised reasonable care or been more diligent.

(III) Any proof of the immediate supervisor or management personnel's knowledge of prior accidents, near misses, safety

complaints or citations from regulatory agencies must be proven by documentary or other credible evidence.

(iii) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer.

(I) If the specific unsafe working condition relates to a violation of a commonly accepted and well-known safety standard within the industry or business of the employer, that safety standard must be a consensus written rule or standard promulgated by the industry or business of the employer, such as an organization comprised of industry members.

(II) If the specific unsafe working condition relates to a violation of a state or federal safety statute, rule or regulation that statute, rule or regulation:

(a) Must be specifically applicable to the work and working condition involved as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(b) Must be intended to address the specific hazard(s) presented by the alleged specific unsafe working condition; and,

8

> > (c) The applicability of any such state or federal safety
> >
> > statute, rule or regulation is a matter of law for judicial
> >
> > determination.
>
> (iv) That notwithstanding the existence of the facts set forth in subparagraphs
>
> (i) through (iii), inclusive, of this paragraph, the person or persons alleged to
>
> have actual knowledge under subparagraph (ii) nevertheless intentionally
>
> thereafter exposed an employee to the specific unsafe working condition; and
>
> (v) That the employee exposed suffered serious compensable injury or
>
> compensable death as defined in section one [§ 23-4-1], article four, chapter
>
> twenty-three as a direct and proximate result of the specific unsafe working
>
> condition . . ..

W.Va. Code § 23-4-2(d)(2)(B).  In cases arising under this section, "[t]he court shall dismiss

the action upon motion for summary judgment if it finds pursuant to rule 56 of the rules of civil

procedure that one or more of the facts required to be proved by the provisions of

subparagraphs (i) through (v), inclusive, paragraph (B) of this subdivision do not exist . . ."

W.Va. Code § 23-4-2(d)(2)(C)(iii).  *See also **Mumaw v. U.S. Silica Company**, 204 W.Va.

6, 511 S.E. 2d 117, 121–22 (1998) (if a defendant can establish that no material fact is in

dispute on any one of the five factors, resulting in favor of the defendant, summary judgment

must be granted).

Notably, the West Virginia Legislature made substantial changes to the deliberate

intent statute in 2015.  These changes included specific parameters as to what evidence will

constitute "actual knowledge." W.Va. Code § 23-4-2(d)(2)(B)(ii)(I–III).  Judge Wilson in the

9

Circuit Court of Marion County, West Virginia, recently discussed these changes in ***Layman v. Ronald Lane***, stating:

> 6.      Most recently, effective June 12, 2015, the West Virginia Legislature amended West Virginia Code 23-4-2(c) in response to two decisions of the West Virginia Supreme Court of Appeals which sought to impute or deem actual knowledge and conscious appreciation to an employer in a "deliberate intention" suit.  These 2015 amendments, which are applicable to this case, legislatively overruled ***Ryan v. Clonch Indus.***, 639 S.E.2d 756 (W.Va. 2006) and ***McComas v. ACF Indus., LLC***, 750 S.E.2d 235 (W.Va. 2013), statutorily eliminating the less stringent imputable or presumed "actual knowledge" jurisprudence of both cases. In ***Ryan***, a divided Supreme Court of Appeals found that "subjective realization" could be imputed to an employer.  Seven years later in ***McComas***, the Court, in a 3-2 decision, found that the employer may be deemed or presumed to have actual knowledge of the unsafe working condition when a safety statute, rule or regulation, or a commonly accepted and well-known safety standard within the industry or business, imposes a specifically identifiable duty to inspect upon the employer, and the inspection would have revealed the specific unsafe working condition. In essence, the ***Ryan*** and ***McComas*** decisions substituted "implied or presumed knowledge" for "actual knowledge" despite the fact that "actual knowledge" was expressly required by the statute.

10

7.      The 2015 amendments to the "deliberate intention" exception to a

participating employer's broad immunity from suit expressly invalidate

the "implied or presumed knowledge" holdings of *Ryan* and *McComas*,

and definitively restrict "deliberate intention" suits to only those limited

cases where an employer's actual subjective knowledge, conscious

appreciation and intention is specifically proved by positive evidence.

W.Va. Code 23-4-2(d)(2)(B)(i)-(v) (2016).  In this matter, the Plaintiff is

subject to these enhanced proof standards of these 2015 legislative

amendments.

*See* [Doc. 172-6].

        These amendments also clarify the specificity required to rely upon state or federal

statute, rule, or regulation to establish a deliberate intent claim and delineate what evidence

will constitute a commonly accepted and well-known safety standard within the industry or

business of the employer under the statute.  W.Va. Code § 23-4-2(d)(2)(B)(iii).

## a. The existence of a specific unsafe working condition.

        Based on the foregoing body of law, SWN defendants assert that plaintiff has not

adequately identified a specific unsafe working condition that existed and presented a high

degree of risk and a strong probability of serious injury or death prior to the subject incident.

[Doc. 173 at 11].  SWN defendants bolster this assertion based on the testimony of their

expert witnesses, which concludes that there was no such unsafe working condition prior to

the subject incident. [Id. at 11–12].  Indeed, a review of the voluminous expert testimony and

reports provided to this Court for purposes of summary judgment, SWN defendants' argument to this point is well taken.

However, plaintiff, in response, has also offered substantial expert reporting and testimony supporting his position that SWN defendants exposed him to a specific unsafe working condition at the time of the subject incident. *See* [Doc. 178 at 3–4]. Plaintiff cites to an event involving former SWN equipment operator, Kyleigh Bowman, who testified via affidavit concerning a substantially similar pump malfunction occurring at the same location approximately one week prior to the subject incident. [Id.]. Plaintiff couples the testimony concerning the Bowman incident with his expert witness testimony in support of the proposition that plaintiff was in fact exposed to a hazardous working condition that presented a high degree of risk and a strong probability of serious injury or death. [Id. at 11–15].

Based upon an extensive review of the pleadings and accompanying exhibits, it is clear that there is a proverbial "battle of the experts" with respect to the existence of a specific, unsafe working condition at the subject worksite prior to plaintiff's injury. But this Court must construe any and all competing facts at summary judgment in the light most favorable to plaintiff. Accordingly, this Court presently rejects SWN defendants' argumentation concerning the existence of a specific, unsafe working condition.

### b. Actual Knowledge of the specific, unsafe condition.

The arguments offered by the parties concerning actual knowledge rely heavily on the aforementioned, competing expert testimony. SWN defendants assert that plaintiff's experts can point to no specific statute, regulation, or industry standard related to the subject equipment at issue. [Doc. 172 at 14–15]. Moreover, they assert that plaintiff's contention that

12

prior incidents form the basis for actual knowledge is unsubstantiated based on a review of the worksite prior to the underlying incident by their expert witnesses. [Id. at 15]. SWN defendants spend a considerable amount of briefing attempting to distinguish the Bowman incident from the subject incident in this regard. [Id. at 15–20].

While the dissimilarity in prior incidents versus the subject incident appears telling, this Court must construe all competing factual evidence in plaintiff's favor. Accordingly, summary judgment on this point is not appropriate when plaintiff's experts have concluded that, based on their opinions, actual knowledge was imputed to SWN defendants based on prior incidents. Accordingly, this Court presently rejects SWN defendants' argumentation concerning actual knowledge of the specific, unsafe condition.

### c. Violation of specific rules, regulations, and standards specific to the oil and gas industry.

The deliberate intent statute requires that the specific unsafe working condition, here assumed to be a "struck by" hazard resulting from the suction hose and nipple separation and associated claims, a failure to train, or a failure to investigate or identify hazards, must be a "a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer." W.Va. Code § 23-4-2(d)(2)(B)(iii). To the extent the allegation rests on an alleged violation of "a commonly accepted and well-known safety standard within the industry or business of the employer, that safety standard must be a consensus written rule or standard promulgated by the industry or business of the employer, such as an organization comprised of industry members . . . ." Id. To the extent the allegation rests on "a violation of a state or

13

federal safety statute, rule or regulation, that statute, rule, or regulation: (a) must be specifically applicable to the work and working condition involved as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions; [and] (b) must be intended to address the specific hazard(s) presented by the alleged specific unsafe working condition . . .." Id.  SWN defendants contend plaintiff cannot meet this threshold.

This Court disagrees based on a review of the voluminous expert testimony submitted by both parties.  More specifically, plaintiff's experts have cited to numerous statutes, rules, regulations, and standards designed to remediate the specific unsafe working conditions that existed prior to the incident involving plaintiff.  Most notably, plaintiff's experts identify SWN defendants' alleged failure to use whip checks which were required by specific guidelines issued by OSHA and related safety standards applicable to the oil and gas industry.  *See* [Doc. 20–22].  SWN defendants attempt to refute this position based on OSHA's investigation and ultimate conclusion that no violations of these standards occurred on the subject worksite. *See* [Doc. 172 at 24–25].  However, such conclusion is not dispositive for purposes of summary judgment when all facts must be construed in plaintiff's favor.  This Court notes that all that is required under this prong of analysis is that plaintiff identify and allege violation of a specific rule, regulation, or standard applicable to the oil and gas industry.  Here, he has done so.  Of course, SWN defendants may present evidence concerning OSHA's findings to refute plaintiff's case in chief in this regard.  Accordingly,  this Court presently rejects SWN defendants' argumentation concerning violation of specific rules, regulations, and standards specific to the oil and gas industry.

### d. Intentional exposure to a specific, unsafe working condition.

W.Va. Code § 23-4-2(d)(2)(B)(iv) requires a demonstration that the "person or persons alleged to have actual knowledge under subparagraph (ii) nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition . . . ." This has generally been evaluated as requiring evidence that an employer had a "conscious awareness" of an unsafe working condition and directed an employee to continue working in a harmful environment. *See Ramey v. Contractor Enters.*, 225 W.Va. 424, 431, 693 S.E.2d 789, 796 (2010). Inadvertent or merely negligent exposure is not sufficient to meet this requirement. *Id.* at 19 (citing *Sias v. W-P Coal Co.*, 185 W.Va. 569, 575, 408 S.E.2d 321, 327 (1991)).

Based on this standard, SWN defendants argue that there is no evidence of a conscious awareness that with full and conscious knowledge of any unsafe working condition they nonetheless directed plaintiff to work in a harmful environment. [Doc. 172 at 31]. In opposition, plaintiff asserts that SWN defendants intentionally exposed him to the unsafe working condition that resulted in his injury because they did not investigate previous incidents of hoses becoming detached from the subject boost pump.

In consideration of the pleadings and accompany exhibits, this contention seems weak. However, this Court is required to construe all competing facts, including those related to intentional exposure by SWN defendants, in the light most favorable to plaintiff. Accordingly, this Court presently rejects SWN defendants' arguments concerning intentional exposure.

### e. Serious, compensable injury.

The parties have not briefed, and apparently do not contest, that plaintiff suffered a serious and compensable injury as defined under the statute.

Based on the foregoing analysis, SWN defendant's Motion for Summary Judgment as to count I is **DENIED**.

### B.     Count II - Negligence

An employer participating in the West Virginia Workers' Compensation system is exempt from common law and statutory claims for the injury or death of an employee, as discussed above.  *See* W.Va. Code § 23-2-6.  This immunity extends to "every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention." W.Va. Code § 23-2-6A.

The extension of an employer's immunity to employees, agents, and representatives is based on the policy that workers' compensation should be the exclusive remedy for personal injuries sustained in the workplace. *See **Erie Ins. Prop. & Cas. Co. v. State Shoe Pizza, JTS, Inc.***, 210 W.Va. 63, 75, 553 S.E.2d 257, 269 (2001).  An employer who is otherwise entitled to this immunity may lose it in only two ways: (1) by defaulting in payment required by the Act or otherwise failing to comply with the provisions of the Act, or (2) by deliberately intending to produce injury or death to the employee.  *See **Smith v. Monsanto Co.***, 822 F.Supp. 327 (S.D. W.Va. 1992).

SWN defendant's contend that under the foregoing body of law, plaintiff's negligence claims at count II must fail under W.Va. Code § 23-2-6.  In support of their argument, SWN defendants note that plaintiff has alleged, at all relevant times, he was employed by "the SWN Energy defendants."  *See* [Doc. 1-1 at ¶ 24].  Plaintiff also alleged that the "SWN Energy

defendants" were involved in and acting in furtherance of the development and operation of the subject wellpad. [Id. at ¶ 24]. Plaintiff's definition in his complaint of "the SWN Energy defendants" included the SWN defendants. [Id. at 10]. Further, plaintiff alleged that all SWN Energy defendants were West Virginia employers subject to "duties and responsibilities set forth in West Virginia Code section 23-4-2 by operation of law and pursuant to contractual terms among the parties." [Id. at ¶ 44].

SWN defendants assert, based on these allegations, that their parent entity SWN as well as the remaining SWN defendants are entitled to immunity under W.Va. Code § 23-2-6 and under an agency theory pursuant to § 23-2-6a, respectively. This Court finds SWN defendants argument in this regard to be highly persuasive.

As identified by SWN defendants, in ***Wetzel v. Employers Servs. Corp. of W.Va.***, 221 W.Va. 610, 656, S.E.2d 55 (2007), the Supreme Court of Appeals of West Virginia held that ESC, an entity that assisted with the provision of workers' compensation benefits, was an "agent" under W.Va. Code § 23-2-6a and was entitled to the immunities provided by the Act. In finding that workers' compensation immunity applied to the defendant, the ***Wetzel*** Court defined the terms "agent" or "representative" in W.Va. Code § 23-2-6a, as any of the following:

1. "[A] person authorized by another to act for him."

2. "One who represents another, called the principal, in dealings with third persons."

17

3.    "He is one who undertakes some business or to manage some affair for another by authority of or on account of the latter and to render an account on it."

4.    Someone who, "acted in place of or conducted business on behalf of [the employer] and was, therefore, an agent or representative of [the employer]."

*Id.* at 615, 656 S.E.2d at 60.  The Supreme Court of Appeals of West Virginia concluded that ESC was an agent and was thus entitled to the protection of W.Va. Code § 23-2-6a because the defendant "*acted in place of* or conducted business on behalf of [the employer]."  *Id.*

Judge Johnston also addressed this agency relationship in a deliberate intent and negligence action in ***Feltner v. Consol of Ky., Inc.***, 2018 WL 2248604 (S.D. W.Va. May 15, 2018).  There, a subsidiary, Consol of Kentucky, Inc. ("COK") was sued as the employer in a deliberate intent action and the parent company Consol Energy, Inc. was sued for negligence. *Id.*  Consol Energy, Inc., relying upon ***Wetzel, supra,*** argued that it was an agent of COK and that it was immune from suit for a negligence action.  In analyzing the allegations, Judge Johnson concluded that Consol Energy, Inc. provided compensation benefits for COK's employees and concluded that Consol Energy, Inc. was an agent of COK and immune from suit under W.Va. Code § 23-2-6a.

Here, based on the undisputed deposition testimony of plaintiff, it is clear that even though defendant SWN's parent company was plaintiff's employer, he was supervised by other SWN employees assigned to subsidiaries such as defendant SWN Well Services, LLC and defendant SWN Production Company, LLC.  *See* [Doc. 172-1 at 60].  Notably, plaintiff's

Response in Opposition only addresses the aforementioned deliberate intent allegations against all SWN defendants and did not attempt to refute *any* of SWN defendants' arguments concerning the statutory bar to plaintiff's negligence claim.

Accordingly, SWN defendants have immunity from negligence claims based on the aforementioned application of immunity within the agency context, and SWN defendants' Motion for Summary Judgment with respect to count II is **GRANTED**.

### C.    SWN Drilling Company, LLC and SWN Water Resources Services Company, LLC

Finally, SWN defendants aver that SWN Drilling Company, LLC and SWN Water Resources Services Company, LLC were not present on the subject wellpad on the date of the underlying incident. [Doc. 184 at 26–27].  SWN defendants contend, and this Court agrees, that plaintiff has offered no evidence to the contrary.  Accordingly, SWN defendants' request that defendant SWN Drilling Company, LLC and SWN Water Resources Services Company, LLC be dismissed from counts I and II is **GRANTED**.

### II.    Defendant JGB Enterprises, Inc.'s Motion for Summary Judgment

Plaintiff's complaint asserts four causes of action against defendant JGB Enterprises, Inc. ("defendant JGB"): a strict products liability claim at count III; a negligence claim at count VII; a strict products liability claim at count VIII; and a breach of warranty claim at count IX. Defendant JGB moves for summary judgment on each count, and this Court will discuss the related arguments in turn.

### A.    Count III - Strict Products Liability

In its Memorandum in Support, defendant JGB admits to producing and selling the hose assembly at issue in this matter. [Doc. 175 at 21]. However, defendant JGB asserts that there has been no testimony or discovery responses indicating the presence of any of its products on or used with the Gorman-Rupp pump at issue in count III. [Id.]. Additionally, defendant JGB contends that the only allegation in count III regarding the hose assembly is contained in paragraph 63, which states: "j) The hose was unable to remain connected to the pump because an improper connecting device was used, which allowed the hose to become disconnected from the pump when exposed to high pressure." [Id.]. Defendant JGB further represents that the undisputed evidence in this matter demonstrates the hose assembly was connected to the boost pump with a 206 Hammer Union, and that there is no evidence this hammer union was sold or manufactured by defendant JGB. [Id. at 21–22].

In a confusingly drafted single paragraph in response to this argument, plaintiff argues against dismissal of count III against JGB by stating that the allegations in count III only relate to the connecting device that was manufactured by defendant Campbell. [Doc. 179 at 13–14]. Based on this argument, plaintiff argues dismissal of count III is unwarranted. [Id]. This Court disagrees, as plaintiff has not offered any evidence that defendant JGB is somehow liable for an alleged manufacturing defect in a product manufactured by defendant Campbell. Accordingly, defendant JGB's Motion for Summary Judgment as it pertains to count III is **GRANTED**.

## B.    Count VII - Negligence

In support of its Motion for Summary Judgment concerning plaintiff's negligence claim, defendant JGB asserts that plaintiff has failed to provide substantiating testimony or evidence concerning the same. [Doc. 175 at 17–18]. Further, defendant JGB contends that plaintiff cannot prove that the JGB hose assembly was the proximate cause of plaintiff's injury, nor can plaintiff defeat the defense of intervening cause. [Id. at 18].

In order to defeat summary judgment, a plaintiff must offer evidence that the alleged product defect was the proximate cause of the accident. The plaintiff bears the burden to establish not only the product defect, but to link the defect to the accident by demonstrating that the defect was the proximate cause of the accident. *Brady v. Deals on Wheels, Inc.*, 208 W.Va. 636, 639, 542 S.E.2d 457, 460 (2000). The proximate cause of an injury is the last negligent act contributing thereto, without which such injury would not have resulted. *Id.*

While defendant JGB attempts to shift sole proximate cause onto SWN defendants, this Court is not persuaded. Plaintiff's expert witness has opined that defendant JGB's failures were proximate causes of plaintiff's injuries. *See* [Doc. 179-11]. Defendant JGB can certainly attempt to devalue these opinions through cross examination, but this Court cannot grant summary judgment when all facts must be construed in plaintiff's favor.

Similarly, this Court is not persuaded by defendant JGB's argument that the acts of the SWN defendants serve as an intervening cause. As noted by plaintiff, the Supreme Court of Appeals of West Virginia has consistently held that determining an intervening cause within the proximate cause analysis is a task for a jury unless the facts and inferences are clear as a matter of law. *See Harbaugh v. Coffinbarger*, 209 W.Va. 57, 543 S.E.2d 338 (2000).

21

The voluminous record in this case is replete with conflicting inferences concerning the underlying incident, and, as such, this Court **DENIES** JGB's Motion for Summary Judgment as it pertains to count VII.

### C.     Count IX - Breach of Warranty

Plaintiff contends that defendant JGB breached two different warranties in count IX—the implied warranty of merchantibility for ordinary purposes and implied warranty of fitness for a particular purpose; defendant JGB seeks summary judgment on both.  [Doc. 175 at 13].

### 1.     A genuine issue of material fact exists as to whether the hose assembly was fit for ordinary purposes.

In order for a good to be deemed for the "ordinary purposes for which it was used," West Virginia Code § 46-2-314 requires that:

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality with the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

W.Va. Code § 46-2-314.  A review of the arguments asserted by defendant JGB and plaintiff indicate that there is a genuine dispute of material fact as to whether the hose assembly was fit for its intended purpose, evidenced by the disputing expert testimony concerning the same. Accordingly, defendant JGB's Motion for Summary Judgment as to fitness for ordinary purposes is **DENIED**.

> **2.    A genuine issue of material fact exists as to whether the hose assembly was fit for a particular purpose.**

An implied warranty of fitness for a particular purpose is derived from W.Va. Code § 46-2-315, which provides:

> Where the seller at the time of contracting has reason to know any particular purpose fo which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section [§ 46-2-316] an implied warranty that the goods shall be fit for such purpose.

Id.

The definition of "particular purpose" is stated in Note 2 of W.Va. Code § 46-2-315, which states a particular purpose "differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to the uses which are customarily made of the goods in question."  Id. at Note 2.

The important distinction in a "particular purpose" claim is a plaintiff must prove the product failed as part of a "particular purpose," not an "ordinary purpose."  Under West Virginia law, an implied warranty for fitness of a particular purpose arises when (1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the buyer relied upon the seller to select suitable goods; and (3) the goods were unfit for the particular purpose intended. *Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co.*, 157 W.Va. 257, 201 S.E.2d 248 (1973).

Defendant JGB avers that the hose assembly at issue was sold as an 8" suction hose, with a maximum working pressure of 150 psi and a temperature rating between -40 and 180 degrees.  [Doc. 175 at 15].  Accordingly, defendant JGB argues that no evidence has been presented suggesting that the hose assembly at issue was purchased to be utilized for any other purpose than as a suction hose under ambient temperatures.  [Id.].

Plaintiff, on the other hand, contends that the hose assembly was purchased for the particular purpose of being able to aide in water transfer during fracking operations. [Doc. 179 at 10].  Further, plaintiff asserts that there was reliance on defendant JGB to conduct testing on the hose assembly prior to purchase, and that defendant JGB failed to conduct hydrostatic testing prior to sale.  [Id].  In this Court's mind, this dispute over the details surround the hose assembly's manufacture and ultimate sale constitute a genuine issue of material facts precluding summary judgment on this count and, therefore, defendant JGB's Motion for Summary Judgment is **DENIED** as it relates to fitness for a particular purpose.

**D.      Count VIII - Strict Liability**

Finally, defendant JGB argues it is entitled to summary judgment on count VIII, in which plaintiff alleges strict liability based on the hose assembly's alleged unfitness for its intended purpose. [Doc. 175 at 5]. This Court has already determined genuine issues of material fact exist as a result of the competing expert witness testimony as it pertains to the hose assembly's use and fitness and, accordingly, defendant JGB's Motion for Summary Judgment is **DENIED** as it relates to this count for strict liability.

## CONCLUSION

Accordingly, and for the reasons contained herein, Judgment–Southwestern Energy Company, SWN Well Services, LLC, SWN Drilling Company, LLC, SWN Water Resources Company, LLC, and SWN Production Company, LLC's Motion for Summary Judgment [**Doc. 172**] is **GRANTED IN PART AND DENIED IN PART**.  Defendant JGB Enterprises, Inc.'s Motion for Summary Judgment [**Doc. 174**] is **GRANTED IN PART AND DENIED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** March 1, 2022.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

25